(No. 20120.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* BEN BROOKS *et al.* Plaintiffs in Error.

*Opinion filed June 20, 1930.*

JOHN H. JOHNTRY, (JOHN M. LONERGAN, of counsel,) for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and ROY D. JOHNSON, (EDWARD E. WILSON, and HENRY T. CHACE, JR., of counsel,) for the People.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiffs in error, Ben Brooks and Harry Weinstein, bring here for review, on writ of error, the record of their conviction in the criminal court of Cook county for the crime of receiving stolen property of the value of $1266.40, the property of the Harrington & King Perforating Company, a corporation.

At about 8:30 P. M., March 16, 1929, between 8500 and 9000 pounds of copper sheet and copper punchings were stolen from the Harrington & King factory, in Chicago. A "copper punching" is a slug punched from the sheet when the punch enters the die. These are sold to junkmen as junk. Between 5:00 and 6:00 A. M., March 18, 1929, two police officers were in a car parked at Ogden and Ridgeway avenues. They saw a truck come east on Ogden, turn north on Ridgeway, turn west in an alley and stop in the rear of the garage of plaintiffs in error, on the corner of Ogden and Hamlin, where they were engaged in the junk business. The policemen then got out of their car, went to the truck, asked plaintiffs in error what they had there, were told it was junk, searched the truck without a search warrant, found mattresses, tires, copper, a couple of kegs of copper punchings, and the name of the Harrington & King Perforating Company on one piece of copper. The officers then

arrested plaintiffs in error and took them and the truck load of junk to the police station. At that time the officers did not know that any copper had been stolen from the Harrington & King Company. Only one of the officers testified as to the search, seizure and arrest, and he said: "When I arrested the defendants they were not committing any crime, as far as I could see. They were proceeding along the street in an orderly manner. When they drove into the alley they were at their garage. The men had no weapons of any kind when they were arrested."

Prior to the impaneling of the jury plaintiffs in error made motions setting up that they had been unlawfully arrested, their property unlawfully searched and seized in violation of their constitutional rights, and each asked that "the property unlawfully seized, and the testimony relative thereto, be suppressed and excluded as evidence against him on his trial." The attorney for plaintiffs in error asked for a hearing on the motions in accordance with the rules of procedure laid down by this court, but the court, instead of hearing the evidence and motions, asked, "And the property seized, was it identified as the property of the complaining witness?" to which question the assistant State's attorney replied, "Yes, your honor." Thereupon the court without any further hearing denied the motions.

Plaintiffs in error, in support of their contention, cite *People* v. *Brocamp*, 307 Ill. 448, *People* v. *Castree*, 311 id. 392, and *People* v. *Stokes*, 334 id. 200. The well considered opinions in those cases seem to definitely establish the rule that property taken by illegal search cannot be used in evidence against the defendant, provided that the application to the court to suppress such evidence be made before the trial is entered upon. In the *Brocamp case* the court said, in quoting from other authorities, that the remedy of the defendant in substance is that he should make timely application to the court, before the beginning of the trial, for an order directing the return of the property so seized,

and that on such an application the question of the legality of the seizure must be fully heard. The court erred in refusing to even hear the question of the legality of the search and seizure.

Officer Powers, one of the officers who made the arrest, testified that plaintiffs in error told him that they had purchased the junk in Cicero; that they did not know the number of the place at which they bought it but could find it. Defendant Brooks went with the officer to Cicero and found the place. Powers said: "We went there and found all kinds of findings scattered around the door. They were the same kind of punchings that were on the truck." He was then asked by the assistant State's attorney, "What else, if anything, did you find at that place?" An objection by plaintiffs in error's counsel was overruled and the witness replied: "When we got to the garage we found a truck that had been stolen, and we found a scale, punchings and some metal scraps and stuff that was stolen from Getz, lying there on the floor, and they identified it as their stuff. They had a robbery, too, over at that place, and we found also some stuff that was stolen from Allen & Co." Counsel for plaintiffs in error then moved that the answer be stricken out, but the court ruled that it should stand. Plaintiffs in error were not in any way connected with the stolen property mentioned by the witness, and there is no evidence that they had ever seen it prior to their visit to the garage with the officers. The admission of this evidence was erroneous and it was naturally prejudicial to plaintiffs in error.

The sheet of copper on which appeared the corporate name was the only property positively identified as having been stolen from the corporation. Its secretary testified that this sheet weighed about fifty pounds and would be worth between $15 and $16. He estimated the value of the material on the truck at $1266. Two witnesses for plaintiffs in error had placed its value on March 16, 1929, at between eleven cents and thirteen cents a pound. While

counsel for plaintiffs in error was examining a third witness on this subject the court said, "There is enough evidence on that unimportant point." Whether, if conviction was had, the punishment should be imprisonment in the penitentiary or in the county jail depended entirely on the value of the property, and was, therefore, of vital importance. The remark was improper. The evidence was pertinent to the issue. *Andrews* v. *People,* 60 Ill. 354.

Plaintiffs in error requested the court to give to the jury an instruction to the effect that no statement as to any transaction other than that contained in the indictment upon which the defendants were being tried, are to be considered as evidence of guilt in the case and should be entirely disregarded in deliberating on the guilt or innocence of the defendants. The court refused this instruction. While this instruction was inartistically drawn its meaning was evident, and it should have been given in view of the testimony of the witness Powers as to the other stolen property.

Plaintiffs in error also requested the court to instruct the jury "that the recent possession of stolen property is not evidence of knowledge that the property was stolen," but the court refused to do so. In *People* v. *Lardner,* 296 Ill. 190, this court said: "Knowledge by the defendant, when he received it, that the property was stolen is essential to a conviction of the crime of receiving stolen property knowing it to be stolen, and such knowledge must be proved beyond a reasonable doubt. (*Cohn* v. *People,* 197 Ill. 482.) The recent possession of stolen property is not evidence of such knowledge.—*State* v. *Buella,* 89 Mo. 595; *State* v. *Richmond,* 186 id. 71." Plaintiffs in error each testified in his own behalf denying all knowledge that the property was stolen. They introduced evidence, which was not controverted, that prior to March 16, 1929, their reputations as honest, law-abiding citizens were good. This is not one of that class of cases where it could be said that the jury could not reasonably have found a verdict of not guilty. It was

therefore highly necessary, to sustain the verdict, that the record should be free from prejudicial error.

For the errors above mentioned the judgment of the criminal court of Cook county is reversed and the cause remanded to that court. *Reversed and remanded.*