The People of the State of Illinois, Defendant in Error, v. Anthony Kissane, Otherwise Called Red Kissane, Plaintiff in Error.

Gen. No. 34,774.

Opinion filed May 19,.1931. Rehearing denied May 29,.1931.

GEORGE HANS and BURKE & CRANE, for plaintiff in error; JAMES M. BURKE, of counsel.

JOHN A. SWANSON, State's Attorney, for defendant in error; EDWARD E. WILSON and GRENVILLE BEARDS-LEY, Assistant State's Attorneys, of counsel.

MR. PRESIDING JUSTICE SCANLAN delivered the opinion of the court.

In the criminal court of Cook county, defendant (plaintiff in error), Anthony Kissane, otherwise called Red Kissane, was found guilty by a jury of the charge of carrying concealed, on or about his person, a revolver, and was sentenced to imprisonment in the

county jail for the term of one year and to pay a fine of $300.

Defendant contends that "the action of the Court in erroneously refusing to hear and determine the question of the legality of the seizure before the trial is an error for which the judgment of conviction should be reversed." A verified petition, filed by defendant before the commencement of the trial, recited that on November 11, 1929, his person was forcibly seized and searched by the police of the City of Chicago, and a certain firearm was seized from his person by the police; "that he has demanded a copy of the Warrant by virtue of same and that he has diligently searched the records of this Honorable Court, and can find no such warrant and that he verily believes that the said police had no such warrant; . . . that at the time of the said arrest he was not violating any of the ordinances of the City of Chicago, or the laws of the State of Illinois, or the United States of America, and that he had not prior to the said arrest been implicated in the commission of any crime nor did said police have reasonable grounds to believe that he had been so implicated; . . . that said search and seizure was illegal, unlawful, and that it was violative of the rights guaranteed him by the terms of the Fourth Amendment to the Constitution of the United States and Sections 2 and 6 of Article 2 of the Constitution of Illinois and for the Court to admit as evidence against him upon his trial the property unlawfully seized would be violative of the rights guaranteed him by the terms of the Fifth Amendment of the Constitution of the United States and Section 10 of Article 2 of the Constitution of the State of Illinois." The petitioner prayed "that a hearing be had as to the source of said evidence and that said property unlawfully seized be suppressed and excluded as evidence against him upon his trial." The trial court refused

to hear and determine, at that time, the question of the legality of the seizure and denied the motion of defendant to suppress the evidence, but held that when the People offered the revolver in evidence, during the trial, he would then hear and determine the petition, out of the presence of the jury. Even if it be assumed, for the purposes of this writ of error, that the trial court erred in not hearing and determining the petition before the beginning of the trial, nevertheless, defendant was not harmed thereby. During the trial, when the People offered the revolver in evidence, *defendant renewed his motion to suppress,* and thereupon the trial court excused the jury and proceeded to hear and determine the petition. The arresting officer then testified (*inter alia*) that the Lake View Trust & Savings Bank had been robbed by a man two days before the arrest of defendant; that all of the members of the police department were furnished with a description of the man who committed the robbery; that the description furnished was that of a man between five feet eleven inches and six feet tall, sallow complexion, slender build, ''and a kind of pointed nose''; that immediately after the police received the description, the witness and his police partner talked the matter over and decided that the ''description fitted Kissane.'' The witness stated that he had no warrant for the arrest of defendant and that he arrested him because his general appearance ''tallied with a man who held up the Lake View Trust & Savings Bank two days before.'' The witness further testified that he knew defendant well, that the latter was well known to the police as a gangster, that he had been charged with murder, robbery and ''racketeering,'' and that the witness had arrested him prior to the time of the arrest in question; that in the present case he arrested defendant before he searched him and found the ''gun.'' Defendant did not offer any

evidence in rebuttal of this testimony and the trial court thereupon denied the motion to suppress the evidence. The jury was then recalled and the trial proceeded. ''Undoubtedly the law is that where an arrest is made by an officer who has reasonable ground for believing that the person arrested is implicated in the commission of a crime, such officer has a right to arrest without a warrant and to search the arrested person without a search warrant. (*People v. Caruso,* 339 Ill. 258, and cases cited.)'' (*People v. DeLuca,* 343 Ill. 269, 271. See also *People v. Swift,* 319 Ill. 359.) ''To justify an officer in making the arrest without a warrant his ground for belief that the person to be arrested is guilty of a crime must be such as would influence the conduct of a prudent and cautious man under the circumstances. (*Kindred v. Stitt, supra.*)'' (*People v. McGurn,* 341 Ill. 632, 636.) In *People v. DeLuca, supra,* the judgment of conviction was reversed because it appeared that the defendant was searched without a search warrant in an effort to discover evidence and an arrest was afterwards made solely on the strength of the discovery, and it was held that the evidence thus obtained was violative of the constitutional rights of the defendant and should have been suppressed on his motion duly made. In *People v. McGurn, supra,* the judgment was reversed for the same reason. In the instant case the People and defendant agree that the arrest was made before the search. The arresting officer testified that as he approached defendant he touched him on the shoulder and told him that he was under arrest, at the same time showing him his police star. Defendant testified that when the officer approached him he ''stuck his gun'' in the back of defendant and at the same time said to him, ''You are going to the can.'' There was no rebuttal evidence offered by defendant, and we are of the opinion that the People made out a prima facie

showing that the officer had reasonable grounds for believing that defendant was the man who robbed the Lake View bank. Defendant does not contend to the contrary. His position is that "the action of the Court in refusing to hear and determine the legality of the search before the trial, was reversible error," and that the hearing had during the trial did not cure the error, regardless of what the proof then showed. We are unable to agree with this contention. *People v. Brocamp,* 307 Ill. 448; *People v. Castree,* 311 Ill. 392; and *People v. Brooks,* 340 Ill. 74, cited by defendant, do not support this contention. In *People v. Brocamp, supra,* the trial court, before the trial, denied the motion to suppress and refused to give the defendant any hearing whatever upon his motion. When the prosecution, during the trial, offered the property in evidence, the defendant again objected to the introduction of the evidence on the ground stated in his motion. The trial court, without a hearing, again denied the motion. The Supreme Court held that "it was the duty of the trial court to inquire into the truth of the charge of defendant, and, if it be found to be true, to sustain his objection to the introduction of all exhibits that were claimed by him as his property and taken from his home by means of unlawful search and seizure." *People v. Castree, supra,* and *People v. Brooks, supra,* are to the same effect. The sole purpose of the inquiry is to determine the legality of the search and seizure, and in the instant case when the revolver was offered in evidence *defendant renewed his motion to suppress* and thereupon a hearing upon his petition was had. It is plain that he was not harmed by the mere fact that the court heard the petition after the trial began. The order that was entered at the time of the preliminary motion was not a final one, and defendant had the right to renew his motion to suppress and he took advantage

of that right, and he is now in no position to justly complain of the procedure followed by the trial court. Had the trial court heard and determined the petition before the commencement of the trial the ruling, under the evidence, would have been the same. So far as we are aware, there has been no decision of our Supreme Court which sustains the instant contention. In our judgment it would work a grave injustice to the People to hold that they would be prevented from introducing competent evidence merely because the trial court refused to pass upon a motion to suppress before the commencement of the trial. While, as we have heretofore stated, defendant does not claim that the People did not make out a prima facie showing on the hearing of the petition, he does argue "that the testimony of the officer, Drury, is unreasonable, improbable, highly unsatisfactory, and unworthy of belief," and should have been disregarded *in toto* by the trial court in determining the petition. Defendant, upon the motion, did not see fit to introduce any evidence in rebuttal and the trial court was not called upon to pass upon the credibility of the arresting officer, and he would have no right to disregard his testimony, as it was not inherently improbable. It is apparent from the verdict that the jury believed the testimony of the officer, and the trial court, by entering judgment, has approved the verdict. It is significant, as the People argue, that defendant introduced no evidence as to his general appearance. The jury saw him on the witness stand and must have concluded that his appearance corresponded with the description of the man who robbed the Lake View bank. That the bank was robbed was not disputed by defendant. He stated that at the time he was arrested he knew that it had been robbed, from articles he read in the papers, but that he did not "hold up" the bank. But even if it could be held that the search and seizure in the instant case was

illegal and that the trial court should have granted the motion to suppress the evidence, nevertheless, the error in that regard would not call for a reversal of the judgment, for the following reason: The arresting officer, in his direct evidence before the jury, testified that he searched defendant and found in the latter's right inside overcoat pocket a 38-caliber revolver loaded with "six bullets, high powered bullets," and that he took the revolver away from defendant. Defendant made not the slightest objection to this evidence. It was only when the State's attorney offered the revolver in evidence that defendant made the following objection: "Mr. Hans (attorney for defendant): I object to that, if your Honor please, I object to the introduction in evidence at this time. I would like to make a motion to suppress the introduction of it, and object to its introduction." In *People v. Saltis,* 328 Ill. 494, the defendant filed a petition to suppress and exclude the evidence gained by the search and the trial court, after a hearing, overruled the motion. In its opinion the Supreme Court states (p. 502): "Upon the trial the plaintiff in error objected to the introduction in evidence of the revolver claimed to have been found upon him but his objection was overruled, and he now insists that he has been deprived of his constitutional rights. The testimony of witnesses that the revolver was found concealed on his person was received without objection and showed that the plaintiff in error was guilty of the offense with which he was charged. The introduction of the revolver in evidence added nothing to the value or strength of the testimony. The whole matter depended upon the credibility of the witnesses as to the finding of a revolver on the person of the plaintiff in error. The showing of a revolver to the jury as the one found added nothing to and detracted nothing from the value of the testimony of the witnesses." So in the instant case, if

defendant's objection to the introduction of the revolver had been sustained, the evidence, admitted without objection, would have shown the guilt of defendant.

Defendant contends that "the decision of the municipal court sustaining the motion to suppress the evidence was *res judicata* of the question of the legality of the search and seizure." He was arrested on November 11, 1929, and on November 12, 1929, an information was filed against him in the municipal court of Chicago charging that he had concealed, on or about his person, a deadly weapon, to wit, a revolver, in violation of section 4, paragraph 141 (4), ch. 38, Cahill's Revised Statutes. The record of the municipal court shows that defendant was not arraigned under the charge and no plea was entered by him, but on November 26, 1929, he filed a "petition to suppress evidence." The hearing on this petition was postponed from time to time, and on March 21, 1930, the following order was entered: "Motion defendant to suppress evidence sustained. Defendant discharged." The indictment in the instant case was returned on March 3, 1930, so that the order upon which defendant relies was entered 18 days after the return of the indictment. The present contention was raised by defendant for the first time upon the argument for a new trial. When the instant case was called for trial, but before the plea of not guilty was entered, defendant requested the court to pass upon a plea of former acquittal which he had entered. In support of this plea the aforesaid record of the municipal court was cited, and the trial court, after a consideration of the same, overruled the plea. Defendant now concedes, as he must, that as he did not plead to the information in the municipal court, "his guilt or innocence was not in issue." On the motion for a new trial defendant abandoned his plea of former acquit-

tal and urged, for the first time, that the legality of the search and seizure was a collateral issue raised in the municipal court and that the decision of that court sustaining the motion to suppress the evidence is *res judicata* of the question in the present proceeding. It is a fundamental rule that the defense of *res judicata* should be interposed or invoked in the proceedings, and the instant contention of defendant was not raised by plea or otherwise before or during the trial. It is apparent that defendant, after the trial, discovered that there was no merit in his plea of former acquittal and then, on the motion for a new trial, shifted his position and raised the instant contention. However, there is no merit in the contention, even if it were properly raised. *Res judicata* is a thing adjudged. The doctrine of *res judicata* is that a question once determined by a judgment on the merits is forever settled so far as the litigants are concerned. Even in the municipal court the ruling of the trial judge suppressing the evidence was not a final one and he, or some other trial judge, might later reconsider the motion to suppress and vacate the order theretofore entered and enter one denying the motion to suppress. If the municipal court had entered an order denying the motion to suppress, defendant might later renew the motion, or, if he had been found guilty of the charge, he might, if a new trial were granted him, again move to suppress the evidence, and, in such event, he would be entitled to a hearing upon the motion. (See *People v. Fox*, 319 Ill. 606, 608–9, where a somewhat similar question is passed upon by the court.) As there was no final judgment in the municipal court, the action of that court in passing upon the admissibility of the evidence in question, could not preclude the trial court in the instant case from passing upon the admissibility of the same evidence. The cases cited by defendant do not support the present contention.

Defendant has seen fit to make a part of the bill of exceptions the entire argument of his counsel in the trial court in support of the motion for a new trial. In that argument counsel stated that only two grounds were urged in support of the motion: one, that the court erred in refusing to hear and determine the motion to suppress before the commencement of the trial, and, two, that the decision of the municipal court sustaining the motion to suppress the evidence was *res judicata* of the question of the legality of the search and seizure. In this court he raises several additional grounds.

Defendant contends that the court erred "in admitting incompetent evidence of a prejudicial nature over the defendant's objections." The arresting officer testified that when he arrested defendant the latter told him that he was "working for Jake Lingle." The following then occurred: "Q. Now, who was Jake Lingle? Mr. Hans (attorney for defendant): I object to that. The Court: He may answer, if he knows. . . . A. He was a man that was recently murdered." Defendant contends that the objection should have been sustained. On the cross-examination of the officer counsel for defendant interrogated him for the purpose of showing that defendant told the witness that he was working for Lingle and that so far as the witness knew, defendant was working for Lingle. The question of the State's attorney was intended to bring out the business of Lingle and there was nothing objectionable in it. The answer was not responsive to the question and if the counsel for defendant thought that it was prejudicial he had a right to make a motion to strike it, but he did not see fit to do so. The present contention is clearly an afterthought. However, we are unable to see how the statement that Lingle was recently murdered could

prejudice defendant, and his counsel, apparently, did not think it did at the time the answer was made. Defendant further argues in support of his contention that the court erred in permitting the arresting officer "to volunteer from the witness stand statements of a prejudicial nature which were not responsive and tended to arouse the passions and inflame the prejudices of the jury." In support of this contention defendant first cites certain answers made by the arresting officer at the time of the hearing on the motion to suppress the evidence, the jury not being present. The argument that statements made by the arresting officer when the jury was not present could arouse the passions and inflame the prejudices of the jury, is, of course, an idle one. In support of the instant contention defendant also cites *the following part of the cross-examination of the arresting officer by counsel for defendant:* "Q. Do you know anybody who ever was in court at any time Anthony Kissane was convicted? A. No, but he was in charge of murder—Mr. Keele (State's attorney): I object. He has answered. Mr. Hans (attorney for defendant): Q. He was charged with murder, is that true? The Witness: A. He was also charged with the Round Out robbery. Mr. Hans: Q. He was charged with murder, is that true? A. Yes sir. Q. Was he acquitted or convicted? A. I believe he was acquitted. Q. Do you know personally whether he ever was charged with murder? A. Why yes he was charged with murder in the Car men's hall. Q. Do you know personally? A. No, I wasn't there at the trial, but I read the papers. Q. Were you there at the time of the arrest? A. No sir. Q. Were you in court at the time of the trial? A. No sir. . . . Q. Do you know who arrested him? A. Yes sir, Fred Tapscott. Q. You do? A. Yes. Q. Did you know, or, do you know anything about the evidence in that case? A. The evidence in the case as I understand it was—

Q. Did you know, or did you not? A. I heard Kissane went in 'with a shot gun and shot up the carmen's hall. Q. You did? A. Yes sir. Q. You were not there, were you? A. No I was not there. Q. You read it in the paper? A. I read some of it in the paper, yes. Q. Sure. You say he is a well known gangster, just what do you mean by gangster, officer? A. Man that lives by the gun. Q. By the gun? A. Yes.'' There was further cross-examination of this witness, along the same line. Defendant contends that the attitude of the policeman showed hostility and contempt for defendant and his counsel and that the court erred ''in permitting this conduct on the part of this witness, an officer of the law, who insisted on volunteering statements highly prejudicial to the defendant.'' All of this testimony was brought out by counsel for defendant, and no objection was made by him to any of the answers and no motion was made to strike out any of this testimony. In fact, no complaint of any kind in reference to the answers or the attitude of the witness was made. The present contention is without the slightest merit. If the trial court, of his own motion, had interfered with the cross-examination, defendant might then have some grounds to complain. During the direct examination of defendant he testified that he had never been convicted of any felony, although the police had caused him trouble by illegally arresting him numerous times. The present claim that the answers of the police officer prejudiced defendant is also an afterthought. The plain purpose of the cross-examination was to show to the jury that while the police had often arrested defendant they had never been able to convict him of any of the charges made. Counsel for a defendant in a criminal case cannot voluntarily and intentionally bring out certain evidence, allow the same to stand, and then in this court complain that the defendant was injured thereby. In support of his pres-

ent contention defendant cites cases like *People v. Battaglia,* 339 Ill. 297, that have no application to a record like the present one. In the case mentioned the court held that where the competent evidence in the record fails to show the defendant's guilt beyond a reasonable doubt and the conviction in the lower court is likely to have been induced by an incompetent statement volunteered by a police officer that he took the defendant "off a street car . . . with three other pickpockets," the conviction must be reversed, although the statement, upon motion of the defendant, was stricken out by the court. In that case the defendant, immediately after this statement was made, moved the court to withdraw a juror and continue the case, which motion was overruled.

Defendant contends that the court erred in overruling the motion for a new trial. In support of this contention he merely states that the case was tried "with an utter disregard of the established rules of procedure as laid down by the decisions of the Supreme Court." We assume that this statement refers to the first contention of defendant, that the court erred in refusing to hear and determine the question of the legality of the seizure before the commencement of the trial, and we have already passed upon that contention.

We have now considered all of the contentions raised by defendant. The judgment of the criminal court of Cook county is affirmed.

*Affirmed.*

GRIDLEY and KERNER, JJ., concur.